[Cite as *State v. Hughes*, 2025-Ohio-894.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,          : CASE NO. 24CA1 & 24CA2

    v.                           :

CHRISTIAN HUGHES,                       : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____

APPEARANCES:

K. Robert Toy, Athens, Ohio, for appellant[1].

Dave Yost, Ohio Attorney General, and Andrea K. Boyd, Special
Prosecuting Attorney and Assistant Attorney General, Columbus,
Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 3-12-25
ABELE, J.

{¶1}  This is an appeal from a Hocking County Common Pleas

Court judgment of conviction and sentence.  Christian Hughes,

defendant below and appellant herein, assigns three errors for

review:

> FIRST ASSIGNMENT OF ERROR:
>
> "SENTENCING APPELLANT FOR RAPE AND SEXUAL
> IMPOSITION VIOLATED R.C. 2941.25, AND

_____

[1]  Different counsel represented appellant during the trial
court proceedings.

APPELLANTS [SIC.] U.S. AND OHIO CONSTITUTIONAL
RIGHT TO BE FREE FROM DOUBLE JEOPARDY."

SECOND ASSIGNMENT OF ERROR:

"THE SENTENCE WAS CONTRARY TO LAW BECAUSE THE
TRIAL COURT FAILED TO MAKE THE REQUISITE
FINDINGS THAT THE COUNTS DO NOT MERGE FROM THE
LIMITED RECORD AND ALLOW FOR CONSECUTIVE
SENTENCES."

THIRD ASSIGNMENT OF ERROR:

"DEFENDANT'S TRIAL COUNSEL PROVIDED HIM WITH
CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF
COUNSEL AT THE CHANGE OF PLEA/SENTENCING
HEARING - ONLY IN REGARDS TO FAILING TO ARGUE
MERGER OF COUNTS SIX AND NINE in 23CR0114."

{¶2} Appellant sexually abused N.C., his fiance's daughter, from age 10 to 12, intimidated witness E.C., N.C.'s brother, and attempted to conceal evidence when he instructed his mother to collect blankets and other items used during the assaults.

### Case Number 23CR0114

{¶3} In June 2023, a Hocking County Grand Jury returned an 11-count indictment that charged appellant with (1) gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony, (2) rape in violation of R.C. 2907.02(A)(2), a first-degree felony, (3) gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony, (4) rape in violation of R.C.

2907.02(A)(2), a first-degree felony, (5) gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony, (6) rape in violation of 2907.02(A)(2), a first-degree felony, (7) rape in violation of R.C. 2907.02(A)(2), a first-degree felony, (8) rape in violation of R.C. 2907.02(A)(2), a first-degree felony, (9) gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony, (10) gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony, and (11) intimidation of an attorney, victim or witness in a criminal case in violation of R.C. 2921.04(B)(1), a third-degree felony.  Appellant entered a not guilty plea.

Case Number 23CR0129

{¶4}  In a separate case, in June 2023, a Hocking County Grand Jury returned a four-count indictment that charged appellant with (1) obstructing justice in violation of R.C. 2921.32(A)(4), a third-degree felony, (2) tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony, (3) attempted obstructing justice in violation of R.C. 2923.02/2921.32(A)(4), a fourth-degree felony, and (4) attempted tampering with evidence in violation of R.C. 2923.02/2921.12(A)(1), a fourth-degree felony. Appellant entered a not guilty plea.

Change of Plea Hearing

{¶5}  The trial court consolidated Case Numbers 23CR0114 and 23CR0129 and held a change of plea hearing on December 27, 2023. Appellee outlined the parties' plea agreement, maximum penalties, and sex offender registration requirements.  Appellant's counsel stated that he had reviewed the agreement with appellant, discussed the rights appellant's plea waived, and explained minimum and maximum possible penalties and registration requirements.  When asked if this agreement is correct, appellant replied, "Yes, Your Honor."

{¶6}  Appellant acknowledged that he holds an associate's degree, reads and writes English, and is on probation with the Hocking County Municipal Court.  In addition, he indicated that he consulted with his attorney, expressed satisfaction with his representation, and acknowledged that he understood the plea agreement, the allegations contained in the indictment, the rights he waived with his plea, and the possible penalties.  The trial court advised appellant of the maximum penalties associated with each count in each case, advised appellant of the difference between concurrent and consecutive sentences and explained the tier

three sex offender registration requirements.  Counsel acknowledged that he believed appellant made his plea freely, knowingly, intelligently, and voluntarily.

{¶7}  Appellee recited the facts and stated that in Case Number 23CR0114 appellant raped and committed gross sexual imposition against 12-year-old N.C. between August 2021 and June 2023.  In Case Number 23CR0129, appellant intimidated victim N.C.'s brother, juvenile E.C., and forced him to recant his initial allegations against appellant in an affidavit.  In Case Number 23CR0129, appellant called his mother multiple times and asked her to retrieve certain blankets and other items from a residence where the sexual assaults occurred.  Appellant changed his plea to guilty in both cases, and the trial court accepted the guilty pleas and set the matters for sentencing.

{¶8}  The plea agreement reflects that on December 27, 2023, appellant entered a plea of guilty to Counts 6 (rape), 9 (gross sexual imposition), and 11 (intimidation of an attorney, victim, or witness in a criminal case).  The plea agreement further indicates that the trial court advised appellant that Count 6 included a 10-year to life sentence and Tier 3 sex offender registration, Count 9 included a 60-month prison term, and Count 11 included a 36-month prison term.  The court also advised appellant that he faced a 2-5

year mandatory postrelease control term on Count 6, an up to 2-year discretionary postrelease control term on Counts 9 and 11, as well as a maximum $20,000 fine on Count 6, and a $10,000 fine on Counts 9 and 11.

{¶9} At the March 21, 2024 sentencing hearing, the trial court reviewed the pre-sentence investigation report and appellant's criminal record, which includes 2010 domestic violence (M-1) and endangering children (M-1) convictions, a 2016 domestic violence (M-1) conviction, a 2017 temporary protection order (TPO) or civil protection order (CPO) violation (M-1), a July 2017 TPO/CPO violation (M-1), and a 2022 domestic violence amended to disorderly conduct conviction (M-4).

{¶10} The trial court then reviewed the victim's statement:

[Y]ou had a negative influence towards my mom, me and my brother. My mom lost custody of us because of you. Her mental health plummeted to where she believed every word you said. We lost our house, our family connections for our best interests. My mental health has been affected to where I can't trust someone unless I fully know their intentions. You tried to brainwash everyone into thinking you were a saint and that you had never done anything wrong, or you never would do anything wrong. You have deeply impacted my life in the worst ways possible and I have to life with the pain and flashbacks and you don't.

Appellee further outlined the facts charged in the indictment:

This victim cried out to her mother as this Court knows as they've already dealt with that case. She cried out to her mother letting her know of the abuse and nothing was

done. It wasn't until three years later, in June of last year, that she finally found someone who would . . . stand up for her, called the police, took her to the hospital and gave her the help that she needed.

And from the beginning this defendant denied everything. And in fact, this defendant made statements such as she made advances towards me, she dressed provocatively towards me. None of this is genuine remorse regardless of what the PSI may say now. I think the defendant's actions and words prior to the date of the sentencing speak volumes. And the fact that he placed the blame on this 12-year-old little child who he was in a sense standing in parentis -- loco parentis of as a stepfather or soon-to-be stepfather.

So, we do believe that he deserves every bit of the five years. We do believe that those two should run consecutive to one another for 15 years to life. In fact, we believe that that is warranted to protect the public. I think, as this Court knows, sexual offenders are the hardest to rehabilitate. And in order to protect the general public from this individual, we do believe that 15 years to life is appropriate.

The intimidation deals with the victim's brother who is also a minor. And he details in the presentence investigation of the domestic violence incident that occurred where the defendant was intoxicated and shoved him up against the wall and choked him. He then reported it to his school and the defendant was charged.

He then details a situation where this defendant and his mother, Tanya Parker, the other defendant, required him to go to downtown Columbus and recant what had happened. Not only did they make him recant, but they then forced him to pay the court fines and costs that this defendant had incurred for that particular incident. I mean, again, you are charged with protecting these children and that's what you do to them.

We do believe that he deserves three years for that and we do believe that it should run consecutive because, not only

is this defendant a danger to children sexually, but he is a danger to children physically as well as he has physically abused one child and sexually abused another.

Turning then to the second case for the obstructing, I think at that point it speaks volumes to his consciousness of guilt and also his mindset at the time. He called his mother. Told his mother to go to a hotel room and to pick up a blanket and wash it because he couldn't fathom that we might - - that the State or the police might go back and find more evidence against him.

Unbeknownst to him, we already had the rape kit being analyzed where his DNA was found inside the vaginal swabs of the victim. But he was trying to conceal and cover his crime. That to me speaks volumes as to his character, as to his intent, and as to his future intent.

And so at this point, Your Honor, we do believe that he - - that three years is warranted, the full years - - 36 months is warranted on that case as well, consecutive to the others for a total of 21 to life.

{¶11} Appellant's counsel argued that appellant has "had plenty of time to look back and reflect," feels genuine remorse for his crimes, has taken full responsibility for his actions, and through the plea agreement wanted to spare the victims the emotional turmoil of a trial. Counsel urged the court to order appellant to serve the sentences concurrently, asked the court to consider appellant's alleged alcohol problem, and requested the court to consider appellant's criminal history as unrelated to the current crimes.

{¶12} The trial court provided appellant an allocution, at

which he stated:

> I just apologize to the Court for my actions as far as taking any responsibility that's been taken as far as with these children. I wish I could change it, but words can't change as far as what's - - what I failed with the situation. I apologize to everyone in here for this whole scenario that's going on. If I could take it back I would just to fix the situation because - - I apologize for this whole - - this whole situation. I apologize.

**{¶13}** The trial court reviewed the principles of felony sentencing, to protect the public from future crime, to punish the offender, and to promote the offender's effective rehabilitation using the minimum sanctions that the court determines accomplishes those purposes without imposing an unnecessary burden on state and local government resources. Thus, after the court considered the R.C. 2929.11 and R.C. 2929.12 factors, statements from counsel, the victims, the defendant, the PSI and the entire record, the court stated:

> Mr. Hughes, I'm going to make some comments before I announce sentencing. I'm going to start with the only positive comment I have which is, a silver lining in you taking a plea deal, is that the victim does not have to come back in court and be retraumatized and tell her story.
>
> You used your position as a family or household member to help facilitate these crimes. On the rape you were engaged to the victim's mother. You lived in the home. I believe she referred to you as her stepfather in the PSI.
>
> The intimidation likewise. You were living in the home acting as a father figure. And the obstruction, you had

your mother, your elderly mother, try to clean up the crime scene to evade criminal justice.

I find that you show no remorse. Although you made the statements today that you apologize, I believe they are insincere. I think that they are not genuine whatsoever. You made a statement in your PSI. This statement was just made in the last couple days. That statement was that the victim was making advances towards you. Do you know how ridiculous that statement is? Do you know how ridiculous that statement is to everybody in this courtroom, that a 12-year-old was making advances toward you?

I read in your PSI that you're 40 years old. You are a grown-ass man and you raped a 12-year-old girl. You robbed this girl of her childhood and your comments are ridiculous and your conduct is sickening.

With regard to consecutive sentences, the court explained:

The Court finds that consecutive sentences are necessary to protect the public from future crime or to punish the defendant. Consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.

I only have to find one of the following three, but I easily find all three. Number one, the offender committed one or more offenses while on probation, parole or post-release control. Number two, at least two of the multiple offenses were committed as a part of one or more courses of conduct and that harm caused by two or more of the multiple offenses was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct. And number three, the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶14} Having considered the pertinent sentencing statutes and factors, the trial court sentenced appellant to (1) serve a 10-year

to life prison sentence on Count 6 (rape), (2) serve a 60-month prison sentence on Count 9 (gross sexual imposition), (3) serve a 30-month prison sentence on Count 11 (intimidation of an attorney, victim, or witness in a criminal case), (4) serve a 36-month prison sentence in Case Number 23CR0139 (obstructing justice), (5) serve all terms consecutively for an aggregate minimum of 20 ½ years and a maximum of life in prison, (6) serve a mandatory 5-year postrelease control term, (7) register as a Tier III sex offender, and (8) pay costs.  The trial court also dismissed Counts 1, 2, 3, 4, 5, 7, 8, and 10 in Case Number 23CR0114 and all counts in Case Number 23CR0129.  This appeal followed.

## I.

{¶15} In his first assignment of error, appellant asserts, citing *State v. Ruff,* 2015-Ohio-995, that the Count 6 rape offense and the Count 9 gross sexual imposition offense are allied offenses of similar import and the trial court's failure to merge the offenses constitutes plain error.  Appellant argues that because the conduct, harm, and animus are the same for the commission of both offenses, the court should have merged those counts and appellee choose the offense for which the court would impose sentence.  In particular, appellant contends that the trial court should have merged Count 6 Rape and Count 9 Gross Sexual Imposition

for sentencing, when committed against the same victim, on the same day, and the record fails to set forth facts sufficient to demonstrate that these counts are not the same act.

{¶16} Appellee, however, contends that in the case at bar, rape and gross sexual imposition are not allied offenses of similar import, and, therefore, should not merge.  Moreover, appellee points out that appellant failed to raise this issue in the trial court.

{¶17} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  This protection applies to Ohio citizens through the Fourteenth Amendment and is additionally guaranteed by Article I, Section 10 of the Ohio Constitution.  This constitutional protection prohibits multiple punishments in a single trial for the same conduct in the absence of a clear indication of contrary legislative intent.  *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *State v. Fannon,* 2018-Ohio-5242, ¶ 129 (4th Dist.).

{¶18} The General Assembly enacted R.C. 2941.25 to identify when a court may impose multiple punishments:

(A) Where the same conduct by defendant can be construed

to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶19}** Although the trial court's duty to merge allied counts at sentencing is mandatory, *State v. Underwood*, 2010-Ohio-1, ¶ 26, a defendant bears the burden to establish that he is entitled to the R.C. 2941.25 protection. *State v. Washington,* 2013-Ohio-4982, ¶ 18. An appellate court reviews a trial court's determination de novo as to whether offenses constitute allied offenses of similar import that require R.C. 2941.25 merger. *State v. Williams*, 2012-Ohio-5699, ¶ 28; *State v. Cole*, 2014-Ohio-2967, ¶ 7 (4th Dist.).

**{¶20}** In *State v. Ruff*, *supra,* 2015-Ohio-995, the Supreme Court of Ohio discussed the proper analysis to determine whether two offenses merge under R.C. 2941.25. "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors - the conduct, the animus, and the import." *Id.* at paragraph one of the

syllabus.  "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus."  *Id.* at paragraph three of the syllabus.  "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate or identifiable."  *Id.* at paragraph two of the syllabus.

{¶21} In the case sub judice, appellee submits that appellant forfeited the issue of merger for appellate review when he failed to object at the change of plea hearing or at sentencing.  Before appellant entered a plea, the trial court stated, "it doesn't appear that any of these charges merge," and then explained concurrent and consecutive sentences.  Trial counsel did not object when the trial court stated that the offenses would not merge, and did not object at sentencing.  Therefore, appellee contends, appellant forfeited the merger issue for appellate review when he failed to timely object.  *See State v. Rogers*, 2015-Ohio-2459, ¶ 28 ("the failure to raise the allied offense issue at the time of

sentencing forfeits all but plain error").

{¶22} Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus ("Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice"). Thus, to prevail under the plain-error doctrine, appellant must establish that "an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis added in *Rogers*.) *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *Rogers* at ¶ 22; *see also State v. Wilks*, 2018-Ohio-1562, ¶ 52, *State v. Bailey*, 2022-Ohio-4407, ¶ 8.

{¶23} The elements of the plain-error doctrine are conjunctive: all three must apply to justify an appellate court's intervention. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) ("By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial"). First, there must be error—i.e., " 'a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings.' " *Rogers*, 2015-Ohio-2459, at ¶ 22, quoting *Barnes* at 27, 759 N.E.2d 1240.

**{¶24}** As noted above, the test to determine whether allied offenses should be merged is:

(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

**{¶25}** *State v. Earley*, 2015-Ohio-4615, ¶ 12, quoting *Ruff, supra,* 2015-Ohio-995, ¶ 31.

**{¶26}** In the case sub judice, the relevant statutes are R.C. 2907.02 and R.C. 2907.05(A)(4). R.C. 2907.02, the rape statute, states, in relevant part:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

The indictment indicates:

Christian Wade Hughes, on or about the 3rd day of June, 2023, in the county of Hocking aforesaid, did engage in sexual conduct with N.C. when Christian Wade Hughes purposely compelled her to submit by force or threat of force and/or did engage in sexual conduct with R.C. who was not the spouse of the offender, whose age it the time of the said sexual conduct was less than thirteen years of

age, to wit: 12, whether or not the offender knew the age of N.C. in violation of R.C. 2907.02(A)(2), 2907.02(B), 2907.02(A)(1)(b), Rape, a felony of the first degree.

**{¶27}** R.C. 2907.05(A)(4), the gross sexual imposition statute, states, in relevant part:

(A) No person shall have sexual contact with another; cause another to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

. . .

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

The indictment indicates:

Christian Wade Hughes, on or about the 3rd day of June, 2023, in the county of Hocking aforesaid, did have sexual contact with N.C., not his spouse, when N.C. was less than thirteen years of age, whether or not the offender knew the age of that person in violation of Ohio Revised Code Section 2907.05(A)(4), 2907.05(C)(2), Gross Sexual Imposition, a felony of the third degree.

**{¶28}** In *Bailey*, *supra,* 2022-Ohio-4407, the Supreme Court of Ohio considered whether the failure to merge kidnapping and rape counts constituted plain error. The court specified: "Application of the law governing the merger of allied offenses is dependent on the specific facts of each case. Here, it is clear to us that in an area of law so driven by factual distinctions, any asserted error was not obvious." *Id.* at ¶ 16. Because the defendant failed

to preserve the issue of merger of allied offenses by raising an objection in the trial court, he forfeited all but plain error, which he did not established. *Id.*

**{¶29}** Nonetheless, appellant contends that in the present case, Count 6 rape and Count 9 gross sexual imposition should have merged at sentencing because they involve the same victim, occurred on the same day, and involved the same conduct. Appellee, however, argues that, although a defendant may not be convicted of both gross sexual imposition and rape when the counts arise out of the same conduct, *State v. Foust*, 2004-Ohio-7006, ¶ 143, appellant's conduct in the case at bar when he committed Count 6 rape and Count 9 gross sexual imposition is not the same conduct. Appellee asserts that Count 6 rape involved digital vaginal penetration, where Count 9 gross sexual imposition involved groping the victim's breasts. As appellee points out, this conduct is separate and identifiable, and the harm separate and distinct. *See State v. Webb,* 2013-Ohio-699, ¶ 12 (8th Dist.)(gross sexual imposition and rape did not merge when one involved oral rape and one count involved manipulating the penis and touching the buttocks; neither were committed with the same conduct nor were they part of a single act, but were distinct and thus constituted separate conduct from the rape and do not merge.); *State v. Roush,* 2013-Ohio-3162, ¶ 70 (10th Dist.)(victim's testimony supports finding that defendant used his hands to touch

her breasts at least twice, and used his mouth to touch her breasts at least twice; thus evidence sufficient to support four gross sexual imposition convictions.); *State v. Hearing,* 2023-Ohio-3704, ¶ 113 (5th Dist.)(when defendant confessed that he touched the two-year-old victim's buttocks and forced the same victim to touch his penis, these separate acts performed for different reasons from the rape charge; thus trial court did not err when failed to merge the rape and gross sexual imposition charges).

{¶30} In *State v. St. John*, 2017-Ohio-4043 (11th Dist.), the Eleventh District wrote that under the first prong of the *Ruff* standard:

> "[g]ross sexual imposition and rape may, depending on the circumstances, be allied offenses of similar import. For instance, it is well-established that gross sexual imposition is a lesser included offense of rape. *State v. Johnson* 19988), 36 Ohio St.3d 224, 226, 552 N.E.2d 1082; *State v. Jones* (1996), 114 Ohio App.3d 306, 325, 683 N.E.2d 87. Accordingly under R.C. 2941.25, a defendant may generally not be convicted of and sentenced for both gross sexual imposition and rape when they arise out of the same conduct." *Id.,* quoting *State v. Hay*, 2000 WL 1852725 (Dec. 19, 2000).

*Id.* at ¶ 18.

The Eleventh District continued:

> Other Ohio appellate districts have followed this reasoning in regard to gross sexual imposition and rape. *See, e.g., State v. J.M.,* 10th Dist. Franklin No. 14AP-621, 2015-Ohio-5574, ¶ 56; *State v. Hemphill*, 8th Dist. Cuyahoga No. 85431, 2005-Ohio-3726, ¶ 98. These districts also emphasize the corollary of *Hay:* that if the gross sexual imposition and rape are based upon *separate conduct*, the

defendant can be convicted and sentenced on both crimes. *State v. Millhoan*, 6th Dist. Lucas Nos. L-10-1328 and L-10-1329, 2011-Ohio-4741, ¶ 49.

**{¶31}** The *St. John* court noted that, in deciding whether the two offenses are based upon the same conduct, the focus is whether a single act accomplished both crimes. "For example, in *J.M.,* at ¶ 56, the merger of gross sexual imposition into rape was upheld because both offenses were completed with one gesture: i.e., while the defendant rubbed his hand across the victim's genitals, he momentarily made penetration with his finger." *St. John* at ¶ 20. However, when two offenses are predicated on distinct acts, courts reach the opposite conclusion. For example, in *Millhoan*, the court held that distinct acts involving different areas of the victim's body that were obviously not performed simultaneously therefore, constituted separate crimes for which the defendant may be convicted and sentenced. *Millhoan* at ¶ 51.

**{¶32}** In *St. John*, the court noted that the rape counts stemmed from the defendant forcing each victim to place her mouth upon the defendant's penis. However, the gross sexual imposition charges stemmed from the defendant forcing each victim to rub their body on the defendant's genitals. Thus, the court concluded that the rape offenses and gross sexual imposition offenses constituted separate

acts that involved distinct parts of each victim's body. *Id.* at ¶ 23.

{¶33} In the case sub judice, in addition to the commission of two offenses that involve different conduct, we further conclude that appellant committed the offenses of rape and gross sexual imposition with separate animus. For example, in *State v. Durham*, 2024-Ohio-3289 (5th Dist.), the Fifth District found that rape and gross sexual imposition were not allied offenses because the defendant groped the victim's breasts with a separate animus from the counts of rape. *Id.* at ¶ 95. The court held:

> In *Knight* [2008-Ohio-579, (8th Dist.)], the testimony showed that the defendant had groped the victim's breast during the episode where he raped her. The Knight court determined that such conduct is separate from the conduct that constituted the rape offense. In *Knight*, the victim was penetrated both vaginally and anally, and the court determined that such conduct is "separate and distinct from the conduct that constituted the gross sexual imposition offense." *I*d. at ¶ 48. Therefore, the court concluded that Knight committed gross sexual imposition when he groped the victim's breast and that this was done with a separate animus from the sexual contact that led to the conviction for rape. *Id*. citing *State v. Reid*, 2004-Ohio-2018, 2004 WL 859172 (8th Dist.); *Teagarden*, 2008-Ohio-6986, ¶ 177. See also, *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 144 (act of touching victims vagina with a knife was conduct separate and distinct from rape; therefore, defendant could be convicted of rape and gross sexual imposition).

*Id.* at ¶ 92. *See also State v. Teagarden, supra,* 2008-Ohio-6986, ¶ 178 (5th Dist.),(appellant's conduct of groping the victim's breasts committed with separate animus than the count of rape.)

{¶34} In *State v. Schroeder,* 2019-Ohio-4136 (4th Dist.), this court concluded that, when the defendant inserted her fingers into the victim's vagina and touched her breasts, the conduct constituted two separate and distinct acts and the victim endured separate harm. *Id.* at ¶ 96. Thus, we determined that the trial court did not commit plain error by failing to merge the rape and gross sexual imposition counts as allied offenses of similar import. *Id.* We explained:

> In *State v. Roush*, 10th Dist. Franklin No. 12AP-201, 2013-Ohio-3162, 2013 WL 3808173, the appellate court found that even if defendant's conduct of touching K.R.'s breasts occurred in close proximity to any of the acts of rape, because defendant's touching of K.R.'s breast was conduct separate and distinct from the acts needed to complete the rapes, and because a separate animus existed for the sexual contact with K.R.'s breasts, the rape and gross sexual imposition convictions were not allied offenses of similar import subject to merger. *Id.* at ¶ 71. In *State v. Cooper*, 2d Dist. Montgomery No. 23143, 2010-Ohio-5517, 2010 WL 4614861, the appellate court noted that "[w]hen a defendant gropes his victim's breast and buttocks, as well as rapes her," the acts "of groping are not merely incidental to the rape, and a trial court does not err in separately sentencing the defendant for each of the counts of gross sexual imposition based upon those actions, as well as for the rape." *Id.* at ¶ 24. This court has found that where the defendant "rubbed [the victim's] breasts, * * * ran his hands through her vagina, and * * * performed oral sex upon her, [e]ven assuming that Appellant's rape and gross sexual imposition offenses could be committed with the same conduct, they were committed with a separate animus." *State v. Byrd*, 4th Dist. Scioto No. 10CA3390, 2012-Ohio-1138, 2012 WL 940272, ¶ 110-11. We agree with the results reached in these decisions.

*Id.* at ¶ 95. *See also, State v. Byrd,* 2012-Ohio-1138, ¶ 110-11 (4th Dist.)(offenses committed with separate animus when defendant rubbed victim's breasts, ran his hands through her vagina, and performed oral sex).

{¶35} Moreover, as appellee points out, even if committed during the same incident, when offenses result in separate specific injuries, they do not merge for sentencing. In *State v. Fannon,* 2018-Ohio-5242 (4th Dist.), the defendant was convicted of endangering children under R.C. 2919.22(A) and R.C. 2919.22(B)(1), and permitting child abuse under R.C. 2903.15(A). *Id.* at ¶ 133. Appellant argued that the trial court should have merged the child endangering counts under R.C. 2919.22(A) and R.C. 2919.22(B)(1). This court concluded that the trial court did not err in its decision not to merge the offenses "because they are dissimilar in import – they involved separate protected societal interests and resulted in separate identifiable harm." *Id.* at ¶ 137. R.C. 2919.22(B)(1) protects a child from direct abuse by a parent, whereas R.C. 2919.22(A) enforces a parent's societal duty to provide care and protection for health issues. *Id.* at ¶ 139.

{¶36} *See also State v. Schroeder*, 2019-Ohio-4136, ¶ 96 (4th Dist.)(when victim forced to endure digital vaginal penetration and touching of her breasts, offenses resulted in separate specific injuries even if committed during same incident); *State v. Barnes,*

68 Ohio St.2d 13, 15 (1981)(each defendant, by engaging in fellatio followed immediately by vaginal intercourse with the same victim, committed two offenses of similar kind separately and with separate animus to each so that each defendant could be convicted of two counts of rape. "Each act was a separate and distinct offense. Each act violated a different area of the victim's body. Each act subjected the victim to a different kind of injury, pain, danger, fear and humiliation."); *State v. Ferrell*, 2014-Ohio-4377, ¶ 33 (8th Dist.) (convictions for rape and gross sexual imposition did not merge as allied offenses where, even though "offenses all occurred close in time to one another, each offense involved different conduct").

{¶37} In the case sub judice, appellee submits that "had Hughes made a merger argument at sentencing, the record would have shown that the sexual conduct underlying the rape charge was digital vaginal penetration, and the sexual conduct underlying the gross sexual imposition offense occurred when Hughes touched the victim's breasts." Here, we conclude that appellant's offenses of rape and gross sexual imposition, while committed against the same victim, were not committed with the same animus, did not involve the same conduct, and did not involve the same harm. Thus, the trial court did not err, plainly or otherwise, when it did not merge Count 6 and Count 9 at sentencing.

{¶38} Accordingly, we overrule appellant's first assignment of error.

## II.

{¶39} In his second assignment of error, appellant asserts that the trial court erred when it sentenced him to serve consecutive sentences. Appellant contends that the sentencing entry and colloquy "made some of the necessary findings," but argues that the trial court did not specifically analyze the merger argument. Appellee, however, argues that the trial court correctly followed sentencing procedures under R.C. 2929.14(C)(4), both at sentencing and in the sentencing entry, and points out, again, that appellant did not raise the merger argument.

{¶40} In general, appellate courts should give broad deference to a trial court's sentencing decision and not serve as a "second-tier sentencing court." *State v. Blanton,* 2025-Ohio-237, ¶ 30 (4th Dist.), citing State *v. Glover*, 2024-Ohio-5195, ¶ 39. Ordinarily, appellate courts defer to the broad discretion trial courts have in making sentencing decisions, and R.C. 2953.08(G) reflects that deference. A trial judge usually has the benefit of presiding over the trial, hearing the witnesses testify, receiving a defendant's allocution, and often hearing directly from the victims at

sentencing. *Blanton* at ¶ 30. Thus, appellate courts possess no inherent right to review a felony sentence "[e]xcept to the extent specifically directed by statute, 'it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.' " (Citations omitted.) *Id.*, citing State *v. Glover*, 2024-Ohio-5195, ¶ 39.

{¶41} R.C. 2953.08(G)(2) provides the sole basis for the appellate court's review of consecutive sentences:

> The court hearing an appeal [of a felony sentence that includes consecutive sentences] ... shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under ... (C)(4) of section 2929.14 ... ;
>
> (b) That the sentence is otherwise contrary to law.

{¶42} This statute does not allow an appellate court to reverse or modify a sentence because a trial court arguably abused its

discretion. *Glover* at ¶ 45; *Blanton* at ¶ 31. An appellate court may increase, decrease, or otherwise modify consecutive sentences only if it clearly and convincingly finds that the record does not support the trial court's findings or it clearly and convincingly finds that the sentence is contrary to law. *Glover* at ¶ 42. " '[C]lear and convincing evidence' is a degree of proof that is greater than preponderance of the evidence but less than the beyond-a-reasonable-doubt standard used in criminal cases." *Id.* at ¶ 46. Furthermore, "[n]owhere does the appellate-review statute direct an appellate court to consider the defendant's aggregate sentence." Instead, we limit our review to the trial court's consecutive sentencing findings under R.C. 2929.14(C). *Id.* at ¶ 43. Nor does the statute allow an appellate court to reverse or modify a sentence because the trial court abused its discretion. *Id.* at ¶ 45; *Blanton* at ¶ 32.

{¶43} In the case sub judice, our review of the sentencing transcript reveals that the trial court made the appropriate R.C. 2929.11 and 2929.12 findings. As we recently held in *State v. Nolan,* 2024-Ohio-1245 (4th Dist.), R.C. 2953.08(G)(2) does not permit an appellate court to simply conduct an independent review of a trial court's sentencing findings under R.C. 2929.12 or its adherence to the purposes of felony sentencing under R.C. 2929.11.

*Nolan* at ¶ 44, citing *State v. Bryant*, 2022-Ohio-1878, ¶ 21, citing *State v. Jones*, 2020-Ohio-6729, ¶ 41-42. Moreover, R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the record does not support the sentence under R.C. 2929.11 and 2929.12. *Bryant* at ¶ 22, citing *Jones* at ¶ 31, 39.

{¶44} Appellant primarily contends that the trial court failed to properly make consecutive sentence findings at the sentencing hearing and that the sentencing entry only made some of the necessary findings. Specifically, appellant argues that the trial court did not analyze the abovementioned merger argument. Instead, the court stated, "at least two of the multiple offenses were committed as part of one or more courses of conduct and that harm caused by two or more of the multiple offenses was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct." Further, appellant asserts that, although the trial court addressed some of these issues on the record, the colloquy was insufficient.

{¶45} Appellee, however, argues that the trial court met its R.C. 2929.14(C)(4) burden at sentencing and in the entry. For example, at the sentencing hearing, the trial court made the required findings in R.C. 2929.14(C)(4) and stated on the record

that "consecutive sentences are necessary to protect the public from future crime or to punish the defendant," and that "[c]onsecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." The trial court specifically noted that it "only ha[d] to find one of the following three, but I easily find all three" of the additional findings in R.C. 2929.14(C)(4)(a)- (c). The court stated:

> Number one, the offender committed one or more offenses while on probation, parole or post-release control. Number two, at least two of the multiple offenses were committed as part of one or more courses of conduct and that harm caused by two or more of the multiple offenses was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct. And number three, the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶46} In the sentencing entries for both Case Number 23CR114 and 23CR129, the trial court stated:

> The Court finds that consecutive sentences are necessary to protect the public from future crime and to punish the defendant. Consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The Court further finds that the offender committed one or more offenses while on probation, parole or post release control. At least two of the multiple offenses were committed as part of one or more courses of conduct and that the harm caused by two or more of the multiple offenses was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct. The offender's

history or [sic.] criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶47} In addition, although appellant made a short statement at sentencing, the trial court stated:

I find that you show no remorse. Although you made the statements today that you apologize, I believe they are insincere. I think that they are not genuine whatsoever. You made a statement in your PSI. This statement was just made in the last couple days. That statement was that the victim was making advances towards you. Do you know how ridiculous that statement is? Do you know how ridiculous that statement is to everybody in this courtroom, that a 12-year-old was making advances toward you?

{¶48} Therefore, the trial court found that (1) consecutive sentences are necessary to protect the public, (2) not disproportionate to the seriousness of the offenses, and (3) the harm caused by these offenses is so great or unusual that a single term would not adequately reflect the seriousness of appellant's conduct. Moreover, the sentence the trial court imposed is within the statutory range.

{¶49} After our review of the entire record, we conclude that the record in the instant case does not clearly and convincingly fail to support the trial court's imposition of consecutive sentences. R.C. 2953.08(G)(2)(a) allows for modification or vacation only when the appellate court "clearly and convincingly

finds" that the evidence does not support the trial court's findings. *Glover* at ¶ 46. Thus, in light of the foregoing, we do not clearly and convincingly find that appellant's sentence is contrary to law.

{¶50} Accordingly, for all of the foregoing reasons, we overrule appellant's second assignment of error.

III.

{¶51} In his third assignment of error, appellant asserts that his trial counsel rendered ineffective assistance of counsel in violation of his constitutional guarantees. In particular, appellant contends that his counsel failed to argue that Counts 6 (rape) and 9 (gross sexual imposition) should have merged. Appellee, however, maintains that because the negotiated plea agreement eliminates the possibility of a mandatory life sentence and dismissed several counts, counsel's decision not to argue merger constituted reasonable trial strategy.

{¶52} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant

is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).

**{¶53}** To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial.  *See Strickland*, 466 U.S. at 687; *State v. Myers*, 2018-Ohio-1903, ¶ 183; *State v. Powell*, 2012-Ohio-2577, ¶ 85.  "Failure to establish either element is fatal to the claim."  *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.).  Moreover, if one element is dispositive, a court need not analyze both.  *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

**{¶54}** The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' "  *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010), quoting *Strickland*, 466 U.S. at 688.  Prevailing professional norms dictate that "a lawyer must have 'full authority to manage the conduct of the trial.' "  *State v. Pasqualone*, 2009-Ohio-315, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988).

**{¶55}** Further, "the performance inquiry must be whether

counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 2006-Ohio-2815, ¶ 95 (citations omitted). In addition, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 2008-Ohio-482, ¶ 10 (4th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). Therefore, a defendant bears the burden of showing ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor*, 2006-Ohio-6679, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156 (1988).

{¶56} To establish prejudice, a defendant must demonstrate that

a reasonable probability exists that "but for counsel's errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine the outcome." *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 2011-Ohio-3641, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 2016-Ohio-8126, ¶ 91 (prejudice component requires a "but for" analysis).  " [T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695.  Further, courts ordinarily may not simply presume the existence of prejudice but must require a defendant to establish prejudice affirmatively. *State v. Clark*, 2003-Ohio-1707, ¶ 22 (4th Dist.).

{¶57} Moreover, we have recognized that speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim.  *E.g., State v. Tabor*, 2017-Ohio-8656, ¶ 34 (4th Dist.); *State v. Jenkins*, 2014-Ohio-3123, ¶ 22 (4th Dist.); *State v. Simmons*, 2013-Ohio-2890, ¶ 25 (4th Dist.); *State v. Halley*, 2012-Ohio-1625, ¶ 25 (4th Dist.); *State v. Leonard*, 2009-Ohio-6191, ¶ 68 (4th Dist.); *accord State v. Powell*, 2012-Ohio-2577, ¶ 86.

{¶58} In the case sub judice, appellant argues that his trial

counsel rendered ineffective assistance of counsel when counsel failed to argue that Counts 6 (rape) and 9 (gross sexual imposition) should merge for sentencing purposes. Appellant further contends that this failure prejudiced him as the court did not engage in the analysis at the sentencing hearing, and sentencing appellant to consecutive prison terms triggered an extra five-year sentence before appellant is eligible for parole.

{¶59} However, appellee points out that because Counts 6 and 9 should not have merged, and because the negotiated plea agreement dismissed four rape counts and amended the fifth to allow the possibility of parole, the decision not to argue merger does not constitute ineffective assistance of counsel. *See State v. Parker,* 2017-Ohio-4382 (7th Dist.)(trial court did not commit plain error by failing to merge some of the offenses, and counsel not ineffective for failing to raise merger issue); *State v. Fortner*, 2017-Ohio-4004 (7th Dist.)(because offenses are not allied offenses of similar import, defendant could not demonstrate prejudice from counsel's failure to request merger, and thus, there was no ineffective assistance); *State v. Crump*, 2019-Ohio-2219 (8th Dist.)(court found counsel not ineffective for failing to seek merger of two child endangerment counts because acts occurred on separate dates and did not share the same conduct or animus.);

*State v. Barron*, 2022-Ohio-102 (12th Dist.)(trial counsel not ineffective for failing to argue merger because offenses not allied offenses of similar import).

{¶60} Finally, to conclude that appellant's trial counsel performed ineffectively, appellant must establish prejudice. In other words, appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. A "reasonable probability" is more than "some conceivable effect," but less than "more likely than not [the error] altered the outcome of the case." *Strickland* at 693. A "reasonable probability" is a probability sufficient to undermine confidence in the result of the proceeding. *Strickland* at 690-691; *Williams v. Taylor*, 529 U.S. 362, 390-391 (2000).

{¶61} As appellee points out, appellant fails to establish prejudice. For example, it is well settled that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy is available. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995); *State v. Lawrence,* 2019-Ohio-2788, ¶ 19 (12th Dist.). In the case sub judice, however, even if for purposes of argument trial counsel's failure to argue that appellant's convictions for rape and gross

sexual imposition should merge at sentencing constituted ineffective assistance, appellant nevertheless failed to establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Spaulding*, 2016-Ohio-8126, ¶ 153, quoting *Strickland* at 694.

{¶62} In the case at bar, trial counsel resolved appellant's case through a negotiated plea agreement. As appellee notes, through that agreement appellee dismissed four rape counts and amended the fifth count to allow appellant the possibility of parole. Thus, the agreement trial counsel negotiated eliminated the possibility of a mandatory life sentence. Therefore, counsel's decision not to argue that the offenses merged, but rather to argue that the rape and gross sexual imposition charges should be served concurrently, constitutes a reasonable strategy. Thus, we do not believe trial counsel provided deficient performance, nor do we believe that trial counsel's decision not to argue that Counts 6 (rape) and 9 (gross sexual imposition) merged for sentencing purposes rises to the level of prejudice as defined in *Strickland*. Consequently, we believe that appellant fails to establish that he received ineffective assistance of counsel.

{¶63} Accordingly, for all of the foregoing reasons, we

overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed. Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                              Peter B. Abele, Judge

                        NOTICE TO COUNSEL
    Pursuant to Local Rule No. 14, this document constitutes a
final judgment entry and the time period for further appeal
commences from the date of filing with the clerk.